# No. 24-20554

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Karen Green,

Plaintiff - Appellant

v.

HCTec Partners, L.L.C.,

Defendant - Appellee

## On Appeal from
United States District Court for the Southern District of Texas

4:22-CV-2559

## BRIEF OF APPELLANT KAREN GREEN

Submitted by:

Bruce A. Coane
Coane and Associates, P.L.L.C.
5177 Richmond Avenue, Suite 770
Houston, Texas 77056
(713)850-0066
bruce.coane@gmail.com
Attorney for Appellant

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| HCTEC Partners LLC | Victor Corpuz of Jackson Lewis, P.C. Dallas, TX |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Karen Green | Bruce Coane of Coane and Associates, PLLC Houston, TX |

Respectfully submitted,
**COANE AND ASSOCIATES, PLLC**
*/s/ Bruce Coane*
5177 Richmond Avenue, Suite 770
Houston, Texas 77056
Telephone: (713) 850-0066
Attorney for Appellant

1

# STATEMENT REGARDING ORAL ARGUMENT

The factual background forming the basis of this lawsuit, and the applicable pretext law and pretext analysis in this case are complex.

Therefore, Appellant respectfully suggests that the Court would benefit from oral argument in this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS…………………..1

STATEMENT REGARDING ORAL ARGUMENT…………….2

TABLE OF CONTENTS………………………………………………………..3

TABLE OF AUTHORITIES……………………………………………….. 5

JURISDICTIONAL STATEMENT…………………………………….7

ISSUES PRESENTED…………………………………….. 8

STATEMENT OF THE CASE…………………………………………………9

SUMMARY OF THE ARGUMENT……………………………………….. 12

ARGUMENT………………………………………………….. 14

    A. Standard of review………………………………………………..15

    B. Green provided sufficient evidence to permit a jury to find HCTec's proffered reasons for her termination were a pretext for discrimination, and this evidence was ignored by the district court…………………………………………………15

        1. The District Court Improperly Weighed Evidence of Pretext……...18

        2. Green Did Not Have to Prove the Factual Inaccuracy of HCTec's Reasons-Only that They Were Pretextual……………...22

        3. HCTec's Deviations from Policy Strongly Suggest Pretext in This Case……………………………………………...25

        4. The District Court Wrongly Applied a "Weak Issue of Fact" Standard……………………………………………...28

    C. Green provided sufficient evidence that she was retaliated against….31

    D. Green provided strong evidence of a hostile work environment based on race, sex, and retaliation…………………...32

CONCLUSION..................................................................................... 34

CERTIFICATE OF SERVICE...............................................................36

CERTIFICATE OF COMPLIANCE.......................................................37

# TABLE OF AUTHORITIES

<u>Cases</u>                                                          Page(s)

*Badgerow v. REJ Properties, Inc.*,
974 F.3d 610, 621 (5th Cir. 2020)......................................................... 32

*Burlington Northern & Santa Fe. Ry. v. White*,
548 U.S. 53, 70-71 (2006)...................................................................34

*Caldwell v. KHOU-TV*,
850 F.3d 237 (5th Cir. 2017)..............................................................29-30

*EEOC v. Texas Instruments Inc.*,
100 F.3d 1173 (5th Cir. 1996)..............................................................25-26

*Evans v. City of Houston*,
246 F.3d 344 (5th Cir. 2001)...............................................................23-25

*Fierros v. Texas Dep't of Health*,
274 F.3d 187 (5th Cir. 2001)................................................................16

*Garcia v. Pro. Cont. Servs., Inc.*,
938 F.3d 236 (5th Cir. 2019)...............................................................31-32

*Gosby v. Apache Indus. Servs.*,
30 F.4th 523, 525 (5th Cir. 2022)........................................................14-15

*Hiner v. McHugh*,
546 Fed.Appx. 401, 408 (2013).............................................................33

*Laxton v. Gap, Inc.*,
333 F.3d 572 (5th Cir. 2003)..............................................................27, 30

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 93 S. Ct. 1817 (1973)...............................................15-17, 21, 25

*Nowlin v. Resolution Trust Corp.*,
33 F.3d 498 (5th Cir. 1994).................................................................14

*Reeves v. Sanderson Plumbing Products, Inc.*,
530 U.S...............................................................................22, 24, 28-30

*Shackelford v. Deloitte & Touche*,
190 F.3d 398 (5th Cir. 1999)...............................................................23

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502, 113 S. Ct. 2742 (1993).....................................................17

*Tex. Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248, 101 S. Ct. 1089 (1981).....................................................17

*Wallace v. Methodist Hosp. Sys.*,
271 F.3d 212 (5th Cir. 2001)..............................................................16-17

5

*Wallace v. Performance Contractors, Inc.*,
57 F.4th 209 (5th Cir. 2023)........................................................33
*Wantou v. Wal-Mart Stores Tx., LLC*,
23 F.4th 422, 433 (5th Cir. 2022).................................................33
*White v. Patriot Electors, L.L.C.*, No. 23-50444,
2024 WL 3935444, at *4 (5th Cir. Aug. 26, 2024)................................19-20

Statutes

28 U.S.C. § 1291............................................................... 7
28 U.S.C. § 1331............................................................... 7
42 U.S.C. § 1981............................................................... 7, 9
42 U.S.C. § 2000e (Title VII of Civil Rights Act of 1964).....................7, 9

Rules

Federal Rule of Appellate Procedure 4...........................................7

# JURISDICTIONAL STATEMENT

## A.    District Court's Jurisdiction

The district court for the Southern District of Texas had federal question jurisdiction over this action, pursuant to, 28 U.S.C. § 1331, because Plaintiff/Appellant, Karen Green, asserted a case under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, and the Civil Rights Act of 1866 (42 U.S.C. § 1981).

## B.    Court of Appeals Jurisdiction

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291 because the judgment below is a final judgment of the United States District Court. The district court issued a final order disposing of Appellant's case on November 7, 2024.

## C.    Timeliness of Appeal

The district court's final judgment was entered on November 7, 2024. Appellant timely appealed the judgment by filing the Notice of Appeal on Monday, December 9, 2024, pursuant to Federal Rule of Appellate Procedure 4.

# ISSUES PRESENTED

1. Whether the district court erred in granting summary judgment for Appellee on Appellant's Title VII sex and race discrimination case by disregarding evidence that shows Appellant's termination was pretextual, despite citing much of the same evidence to find that Appellant made a prima facie case of discrimination.

2. Whether the district court erred in granting summary judgment for Appellee on Appellant's retaliation case by disregarding evidence showing causation.

3. Whether the district court erred in granting summary judgment on Appellee's hostile work environment case by finding that a hostile work environment did not exist, despite finding enough evidence to support a prima facie case of discrimination.

## STATEMENT OF THE CASE

On August 2, 2022, Appellant, Karen Green ("Green") sued HCTEC Partners, LLC ("HCTec") in the United States District Court for the Southern District of Texas for race discrimination, sex discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and under 42 U.S.C. § 1981. On July 10, 2024, HCTec filed a Motion for Summary Judgment on Green's causes of action. Record on Appeal ("ROA").711-39. Green timely filed a Response with evidence rebutting all of HCTec's contentions; she provided substantial documentary and deposition evidence proving that she had been terminated for discriminatory reasons. ROA.809-1167. On August 7, 2024, HCTec filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment. ROA.1169-89. On August 15, 2024, the district court granted summary judgment against Green, despite agreeing with most of Green's Response and not agreeing with most of HCTec's arguments. ROA.1233-48; Record Excerpts ("RE").18-33. This appeal followed. ROA.1276-77; RE.16-17.

### Statement of Facts

Karen Green, an African American female, began working at HCTec in April 2018 as a Team Lead in their Managed Services Division. ROA.854. Throughout her employment, Bernard Rush ("Rush") was Green's immediate supervisor who reported directly to Rob Dreussi, Chief Information Officer. *See*

9

ROA.854, 1061. Ms. Green received a positive mid-year evaluation in this role, which led to her promotion as Tier 2 Applications Manager in January 2021. ROA.924-25. Ryan Noland ("Noland"), a White male, was also a Tier 2 Manager and thus held a similar position to Green. ROA.847; RE.35, ROA.927. Following the promotion, Rush began discriminating against Green because of her race and sex. ROA.848. Noland and Green were responsible for 10 teams which they agreed to split evenly. ROA.865-66. Rush, however, rearranged the teams unevenly, placing Green in charge of six teams while placing Noland in charge of four. This increased Green's workload by ten to fifteen hours per week. *Id.* and ROA.847-48; RE.35-36. Green was treated with less respect and given less attention than Noland, despite the fact that they were in similar roles and Green was in charge of more teams. *Id.* For example, when Green asked Rush questions, he failed to respond. *Id.* However, when Noland asked questions, he would receive a response right away. *Id*. Rush also placed Green on projects that she lacked expertise in, even though he was aware that Noland had the proper experience for those projects. ROA.848; RE.36. This unnecessarily increased the strain on Green. Despite these unfavorable conditions, Green performed her job properly. The district court agreed that Green never received any formal or written warnings from HCTec regarding her performance. ROA.1237; RE.22 ("HCTec did not document issues about Green's performance or qualifications before she was fired, other than

10

in an email from Mayolo describing her performance as poor."); ROA.1242; RE.27. ("HCTec claims to have offered 'coaching and counseling' to Green, but provides no evidence in support. HCTec does not dispute that Noland received various remedial approaches.")

On or about February 3, 2021, Green reported concerns regarding Rush's discriminatory actions to Tracye Mayolo ("Mayolo"), a White female in Human Resources. ROA.1235; RE.20. Green explained that her disparate treatment compared to Noland was based on her sex and race. *Id*. After Green's complaint, a three-way phone call between Green, Rush and Mayolo was held to discuss the complaint. *Id*. Another employee informed Green that Mayolo had called Rush before the three-way phone call. *Id*. After Green reported discrimination, she continued to be treated worse than her White and male colleagues, and furthermore, she faced retaliation for complaining. ROA.1236; RE.21. Rush retaliated against her by increasing her workload while lessening Noland's. *Id*. In May 2021, Rush and Mayolo told Green in a phone call that she was being terminated. *Id*. There was no letter of termination with a reason provided, and no documentation of the meeting. *Id*.

After this litigation began , HCTec came up with baseless, pretextual reasons for terminating Green. In its summary judgment motion, HCTec made vague claims that she mismanaged and was unprepared for a Zoom meeting. ROA.722.

Second, they claimed Green made stereotypical comments about one of her subordinates, Hasheem Reddick, based on his cultural background; yet, Green provided evidence, in the form of a Teams chat, that she was merely relaying another employee's concerns about Hasheem. ROA.722 and ROA.875; RE.41. Third, HCTec alleged that Green "was insubordinate and acted inappropriately" by copying a client on an email. ROA.723. But HCTec failed to demonstrate that this email was insubordinate or inappropriate; indeed, Green has stated that she sent the email in accordance with Mr. Rush's instructions. ROA.850; RE.38. After Green's termination, Noland (her White counterpart) assumed the duties and responsibilities of Green's role, except for the Parkview Project and inpatient lead responsibilities. ROA.1241; RE.26. Moreover, a White woman and the Team Leads took over the reporting aspects of Green's position. *Id*.

## SUMMARY OF THE ARGUMENT

The District Court erred in granting Summary Judgment against Green on her case of race and sex discrimination under Title VII and Section 1981, as well as her case of hostile work environment and retaliation. Green submitted sufficient evidence that HCTec's proffered reasons for her termination were pretextual and that HCTec's actions were more likely than not motivated by Green's race and sex. Nonetheless, the District Court ignored Green's evidence of pretext and construed

the record in a manner favorable to HCTec, despite the fact that HCTec's reasons were fabricated and despite the court's acknowledgement of instances where HCTec made claims without any supporting evidence. ROA.1241; RE.26. Green submitted numerous exhibits to rebut each of the termination reasons asserted by HCTec. ROA.838-40 (list of exhibits in support of response to MSJ). The district court appears to have relied on these false termination reasons, despite the lack of supporting evidence and without reference to Green's compelling evidence to the contrary. ROA.1243; RE.28. The district court ignored the facts undermining HCTec's termination reasons. ROA.1244; RE.29 ("The record does not give rise to factual disputes material to determining whether HCTec's proffered reason was pretextual.") The court noted that "HCTec disputes elements two through four" of Green's prima facie case, but rejected HCTec's arguments on each of those elements for various reasons. ROA.1240-41; RE.25-26. On elements two and three, the district court disagreed with HCTec's legal arguments that Green was "not qualified" and that she must show but-for causation on her discrimination cause of action. *Id.* On the fourth element–whether the plaintiff was replaced by someone outside her protected group–the district court flatly stated that "[t]he record does not support HCTec's assertion" that Oluyseyu Amele, an African American woman, replaced Green. *Id.* In other words, the district court found that HCTec misrepresented a crucial *fact*, suggesting a lack of candor by HCTec in this

litigation. But then, despite HCTec's untrustworthiness, the district court inexplicably proceeded to accept HCTec's reasons for terminating Green, sidestepping Green's compelling evidence that those reasons were false and pretextual. ROA.1244-45; RE.29-30. It erred by incorrectly applying the legal standards for pretext and ultimately granting summary judgment for HCTec on race and sex discrimination. *Id.* Additionally, the district court erred in granting summary judgment to HCTec on Green's retaliation case and her hostile work environment case. ROA.1245-48; RE.30-33. Only a jury can resolve these disputed material facts. The district court's grant of summary judgment should therefore be reversed, and this case remanded for trial.

## ARGUMENT

Because the District Court erred with respect to both the law and the evidence in this case, summary judgment was improper and should be reversed. Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and shows that the moving party is entitled to judgment as a matter of law. *Gosby v. Apache Indus. Servs.*, 30 F.4th 523, 525 (5th Cir. 2022). Because this is an appeal from a grant of summary judgment, this Court is rule-bound to view all evidence in the record in the light most favorable to the plaintiff, Green. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 500 n.1 (5th Cir. 1994).

14

## A.    Standard of review

The standard of review utilized by this Court in reviewing the grant of a Motion for Summary Judgment is *de novo. Gosby v. Apache Indus. Servs*., 30 F.4th 523 (5th Cir. 2022).

## B.    Green provided sufficient evidence to permit a jury to find HCTec's proffered reasons for her termination were a pretext for discrimination, and this evidence was ignored by the district court.

Green asserts that she was unlawfully terminated because of her race and sex. ROA.381-92. HCTec, conversely, claimed in its motion for summary judgment that Green was terminated due to a series of alleged performance deficiencies. ROA.729-30. The district court agreed that Green offered sufficient evidence of each of the four *McDonnell Douglas* factors to support a prima facie case of discrimination. ROA.1239-43; RE.24-28. These factors, along with other circumstantial evidence and the implausibility of HCTec's rationales for terminating her, show that Green satisfied her ultimate burden of proof that there was a genuine dispute of material fact and that her termination was motivated by race and gender.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discharge an employee because of her race or sex. In order to prevail on a Title VII discrimination case, a plaintiff may make a case of discrimination either

15

directly or indirectly. "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001). But if such evidence is unavailable, a plaintiff can still prove discrimination indirectly. *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 219 (5th Cir. 2001). A plaintiff's burden of proof is mitigated by the *McDonnell-Douglas* framework, which provides a structured approach to proving the case. Under the *McDonnell-Douglas* framework, the plaintiff must show: 1) the plaintiff is a member of a protected class; 2) the plaintiff was qualified for the position before being discharged; 3) an adverse employment decision was made; and 4) the employer filled the position with a person who is not a member of the plaintiff's protected class. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817 (1973).

Once established, a presumption of discrimination is raised, and the burden then shifts to the defendant to produce some evidence of a legitimate, non-discriminatory reason for the adverse employment decision. *Wallace,* 271 F. 3d at 219. If the employer provides a valid, nondiscriminatory reason for the termination, the presumption of discrimination is set aside. *Id*. The burden then shifts back to the plaintiff to persuade the trier of fact by a preponderance of the evidence that the employer's reasons are pretextual. The plaintiff must put forward evidence rebutting each of the non-discriminatory reasons the employer articulates.

16

*Wallace,* 271 F 3d at 220. Such evidence leads to a finding of discrimination. *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089 (1981); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511-12, 113 S. Ct. 2742 (1993); *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802. The plaintiff's burden of showing pretext ultimately "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Burdine,* 450 U.S. at 256. Here, the district court specifically found that:

> "Green has raised factual disputes material to determining whether she was treated less favorably than her white male counterpart." ROA.1242; RE.27.

Despite this stark finding, which would usually lead to a denial of the defendant's summary judgment motion, the court then went on to credit HCTec's justifications for its actions without considering the likelihood or possibility that those justifications were pretextual. ROA.1244-45; RE.29-30.

Green proved that HCTec's stated justifications were either factually incorrect or tainted by significant procedural flaws, including violations of company policy and the denial of Green's right to meaningfully respond to the allegations against her. *See* ROA.897-98 (HCTec's written "progressive discipline" policy which was clearly not followed in Green's case); ROA.900-02 (emails showing abruptness of Green's termination).These factors, when considered together, provide sufficient reason to infer that HCTec's true motivation for

17

terminating Green was discriminatory, creating a genuine issue of material fact that must be resolved by a jury. The three reasons HCTec offered to justify her termination were completely undocumented: Green was given no written warnings or write-ups while she held her job and received no termination letter during or after her termination. ROA.851; RE.39, ROA.928-29. HCTec's reasons therefore lack any credibility and are clearly pretexts intended to obscure the company's unlawful conduct.

## 1. The District Court Improperly Weighed Evidence of Pretext.

The district court in this case disregarded Green's evidence that undermined HCTec's purported nondiscriminatory explanations. The district court failed to draw all reasonable inferences in favor of Green, as is required at the summary judgment stage; instead, it summarily accepted HCTec's post-termination explanations and ignored Green's evidence that those explanations were pretextual. ROA.1243-45; RE.28-30. In her summary judgment affidavit, Green explained:

> "Shortly after the Teams message where I said 'I am done,' Mr. Rush and Ms. Mayolo called me to terminate me without giving me an opportunity to explain my message or conduct an investigation.
> …
> During the termination phone call, Mr. Rush and Mayolo explained that I was being terminated effective immediately for the Teams message ('i am done') that they deemed inappropriate. They stated no other grounds for termination in the termination call.
> …

I was fired on a phone call and there was not a termination letter or other documentation provided to me regarding the reasons for my termination other than as stated above, fired for the TEAMS message." ROA 850-51; RE.38-39.

The timing and circumstances of the termination, as described by Green, strongly suggest that HCTec's other proffered reasons for terminating her are pretextual. Moreover, the reasons given by HCTec lack credibility on their face. For instance, HCTec points to an incident where Green supposedly sent an email to a client, Centura, which Mr. Rush said he found "inappropriate." ROA.781-83. But the email in question is very measured and shows no signs of impropriety. ROA.877-79. Moreover, Green and Rush have made directly contradictory statements–which must be resolved in a trial setting–about whether her email to Centura was aligned or misaligned with Rush's instructions. *Compare* ROA.850; RE.38 (Green declared, "I responded via email to Centura in accordance with what Mr. Rush instructed") *with* ROA.782-83 (Rush testified that Green's emails contradicted his decision). In his deposition, Bernard Rush conceded that Centura never complained about the email. ROA.976. HCTec never offered evidence that its business relationship with Centura was harmed even slightly by Green's email. Those circumstances clearly suggest that HCTec brought up this incident as a pretext for terminating Green. Yet the district court failed to consider that.

This Court in *White v. Patriot Erectors, L.L.C.,* found that the plaintiff had presented evidence refuting the employer's nondiscriminatory reasons; this

19

evidence was of sufficient quality to permit an inference of discrimination without any further showing of animus by the plaintiff. *White v. Patriot Erectors, L.L.C.*, No. 23-50444, 2024 WL 3935444, at *4 (5th Cir. Aug. 26, 2024) (upholding jury verdict for plaintiff against defendant's motion for judgment as a matter of law). The jury could infer discrimination from the false reasons themselves. *Id*. Therefore, if the record in this case contains sufficient evidence for a reasonable jury to conclude that the employer's stated reasons for terminating the employee were mere pretext, then summary judgment should have been denied. *Id*. And this Court, respectfully, should reverse and remand.

The district court in this case disregarded Green's evidence, such as email chains and Teams messages, that undermined HCTec's "nondiscriminatory" explanation. ROA.877-84 (email chain with Centura); ROA.875; RE.41 (Teams chat between Green and Rush about talking to Hasheem). The district court failed to draw all reasonable inferences in favor of Green: it showed no skepticism toward HCTec's explanations and ignored evidence which, viewed in context, demonstrates that the reasons for termination were pretextual. ROA.1243; RE.28. Strangely, even though the district court *disbelieved* HCTec on every factual point related to Green's prima facie case, it then *believed* HCTec on every point relating to HCTec's reasons for termination while ignoring evidence that those reasons were pretextual. ROA.1241-43; RE.26-28. Most notably, the district court rejected

20

HCTec's arguments as to the fourth element of Green's prima facie discrimination case under the *McDonnell Douglas* framework, which requires "the plaintiff to show that she was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside her protected group." *Id.* Specifically, the district court found that "[t]he record does not support HCTec's assertion that" Oluyseyi Amele, an African-American woman, replaced Green after her termination; rather, Green's immediate replacement was Noland, a white man, and Amele only took over after Noland was also terminated. ROA.1241; RE.26.

While the district court was rightly critical of HCTec's assertions at the prima facie stage, it inexplicably believed equally dubious assertions by HCTec at the pretext stage. The district court wrote that "[t]he record does not give rise to factual disputes material to determining whether HCTec's proffered reason was pretextual." ROA.1244; RE.29. This finding by the district court was facile and unsupported; indeed, it failed to fully consider Green's briefing and exhibits which vigorously disputed HCTec's reasons for terminating her. The district court stated that there was:

> "uncontroverted evidence showing that [Green] did refuse to perform her job duties of working with a subordinate employee [Hasheem Reddick]; that she did make inappropriate comments about that employee's culture and ethnicity." ROA.1244; RE.29.

This finding by the district court is not supported by the record in this case. Green has directly disputed and controverted HCTec's account of this incident, stating that she merely relayed the concerns of Dane Young, another employee, about Hasheem Reddick. ROA.849; RE.37. A short Teams chat, attached as an exhibit by *both* parties in this case, clearly demonstrates that Green was indeed relaying Young's concerns. ROA.790, ROA.875; RE.41.

### 2. Green Did Not Have to Prove the Factual Inaccuracy of HCTec's Reasons-Only that They Were Pretextual.

Green presented compelling evidence that creates a genuine dispute of material fact, demonstrating that each of HCTec's proffered reasons for her termination is not credible. In this regard, it is important to note that Green was not required to show that each of HCTec's stated reasons for her termination were factually false, although this would be sufficient. Rather, Green is only required to prove that the stated reasons for her termination were not the real reasons for her termination but were only a "pretext for discrimination." *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. at 143 (plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.")

In other words, Green did not have to prove that she in fact was prepared for the Zoom meeting, that she did not make an inappropriate comment about a

subordinate, or that she did not improperly send an email to a client (although she did dispute HCTec's account of the nature of these incidents). See *supra*. Rather, even if HCTec's version of events is true (which Green strongly disputes), Green only needs to show that these reasons *were not the real reasons* she was fired but that they were used as excuses to cover up discrimination. It is revealing that Green was never written up for any of these occurrences. ROA.1237; RE.22 (district court found that "HCTec did not document issues about Green's performance or qualifications before she was fired, other than in an email from Mayolo describing her performance as poor"). The lack of documentation suggests that these incidents, even assuming for the sake of argument that they occurred in the manner HCTec alleges, did not motivate her termination. Rather, these occurrences are nothing more than post-hoc rationales for terminating her. In contrast, Green's positive performance review *was* documented in writing. ROA.924-25.

The district court erred in relying on *Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001) and *Shackelford v. Deloitte & Touche*, 190 F.3d 398 (5th Cir. 1999) to support its conclusion that the employer's perception of Green's performance, whether accurate or not, could justify HCTec's decision to terminate her. The district court described its inquiry as "whether HCTec's perception of Green's performance, accurate or not, was the real reason for her termination." ROA.1243;

RE.28 (citing *Evans v. City of Houston*, 246 F.3d 344, 355 (5ᵗʰ Cir. 2001) (internal citations omitted) ). But the full quote in *Evans* was:

> Thus, Evans cannot survive summary judgment merely because she disagrees with the City's characterization of her disciplinary history; rather, "the issue is whether [the City's] perception of [Evans's] performance, accurate or not, was the real reason for her termination." *Id.* at 408-09 (emphasis omitted). *Evans v. Houston*, 246 F.3d 344, 355 (5th Cir. 2001).

The *Evans* court emphasized that the plaintiff could not avoid summary judgment on a discrimination case merely by disputing the employer's characterization of disciplinary history. *Id.* Rather, what matters is whether the employer's perception of the plaintiff's performance, *regardless of its accuracy*, was the *real reason* for the termination. *Id.* This position is based on the principle that an employer's negative beliefs about an employee's performance can refute accusations of discrimination, even if the belief is incorrect. *See id.* Title VII is meant to protect employees from discrimination based on protected traits; it is not meant to protect employees from employer mistakes which are not motivated by discriminatory attitudes. But Green's case is far more compelling than *Evans* because her evidence does show that HCTec's explanations are not merely mistaken, but are not legitimate, untrustworthy and unworthy of credence, which the *Evans* opinion recognizes is a way to establish pretext. *Id.* at 350 ("the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose") (quoting *Reeves*, 120 S. Ct. at 2108).

Moreover, in *Evans*, the Fifth Circuit's pretext analysis for discrimination was hypothetical, as the district court found that the plaintiff failed to make a prima facie case. *Evans*, at 350 ("even if she had established a prima facie case of discrimination, we find that" Evans did not show that the employer's reasons were pretextual). Conversely, in this case, the district court found that Green successfully established a prima facie case of both discrimination and retaliation. ROA.1243 (finding four prima facie prongs for discrimination were met); ROA.1245 (finding three prima facie prongs for retaliation were met). This difference is significant because it means that, unlike *Evans*, Green's case warrants a full evaluation under the *McDonnell Douglas* burden-shifting framework. The *Evans* conducted a full pretext analysis only for retaliation; here, the evidence which was sufficient, in the district court's view, to support Green's prima facie case of discrimination. *Id.* This bolsters the argument that pretext is evident.

### 3. HCTec's Deviations from Policy Strongly Suggest Pretext in This Case

The district court cited *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173 (5th Cir. 1996), to suggest that a deviation from company policies does not automatically indicate pretext. However, the factual circumstances in *Texas Instruments* are distinguishable from those in Green's case. The district court's opinion states:

"Even if HCTec did not follow its usual policies before terminating Green, an employer's disregard of its policies 'does not of itself conclusively establish that a nondiscriminatory explanation for an action is pretextual.'" ROA.1244; RE.29 (citing *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996)).

In *Texas Instruments*, the company created a new layoff policy with the intent to apply that policy consistently; the company did not simply fail to follow the usual policy. *Id.* Further, the company carefully outlined why it deviated from the original policy. *Id.* This contrasts with Green's case because she argued that HCTec failed to follow the policies *that were already in place* that were specifically in place for addressing performance issues and terminations. *See* ROA.897-98 (HCTec's written progressive discipline policy). HCTec did not repeal or overhaul its progressive discipline policy due to a change of heart about how employee discipline should be handled. Rather, HCTec kept its progressive discipline policy but simply refused to apply it to Green–a clear sign of discrimination. The decision to terminate Green was made hastily and with no attempt at discussion. *See* ROA.886 (Green's "i am done" email at 11:32am on May 13); ROA.895 ("don't argue–just tell her decision has been made" email at 12:07pm); ROA.900 ("she's [terminated] in system" email at 12:08pm). Moreover, Green does not point to deviation from company policy as her *sole* argument that HCTec's reasons for terminating her are pretextual; rather, she pointed to these

deviations from policy within a broader argument that HCTec's rationales for terminating her are implausible and pretextual. See *supra*.

The *Laxton v. Gap, Inc.,* 333 F.3d 572 (5th Cir. 2003), case, where this Court reversed a district court's grant of summary judgment for the employer, provides a better comparison. In *Laxton*, the court found that deviations from company policy, *coupled with* failures to address alleged performance violations, justified a finding of pretext. *Id* at 581 ("if Gap were genuinely concerned about Laxton's asserted performance-related problems, it would have permitted Laxton the opportunity to explain or to improve her conduct, but it did not do so") *Laxton* supports the argument that while deviation from policy alone does not establish pretext, the combination of policy deviations with unexplained or inadequately addressed performance issues can create a substantial inference that those performance issues are pretext. *Id.* The failure of HCTec to properly document or address the alleged performance issues, combined with deviations from their established policies, shows that their reasons are pretextual. This is because the deviation from policy cannot be viewed in isolation but rather in the context of how it impacts the handling of the performance issues and termination process. The district court erred by viewing the policy deviations in isolation, and failed to give weight to a striking finding that it made: HCTec did not document any of these alleged performance issues, but did document Green's positive performance review.

27

ROA.1237; RE.22. Therefore, HCTec's failure to adhere to established policies, *viewed in context*, provides a compelling basis for concluding that HCTec's reasons for termination are pretextual.

### 4. The District Court Wrongly Applied a "Weak Issue of Fact" Standard.

The district court relied on *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), to conclude that Green had only raised a "weak issue of fact" regarding the employer's reasons for termination. The district court opinion states:

> The record does not give rise to factual disputes material to determining whether HCTec's proffered reason was pretextual. Even if the reason HCTec gave at the time it terminated Green differs from its proffered reasons at summary judgment, that does not mean HCTec's proffered reasons are unworthy of credence. Such an inference may be made "[i]n appropriate circumstances," but here, Green has "created only a weak issue of fact as to whether the employer's reason was untrue."

ROA.1244; RE.29. (citing *Reeves,* 530 U.S. at 148).

But the district court incorrectly relied on *Reeves* to support its view that summary judgment is appropriate when there is a "weak issue of fact" about the employer's reasons for firing an employee. Indeed, the district court stated in its "Legal Standards" section that a "genuine issue of material fact" is enough to defeat summary judgment. ROA.1237; RE.22. Thus, a "weak" issue, as long as it is "genuine," is sufficient to deny summary judgment and allow the case to go to

trial. The court's citation to *Reeves* overlooks an essential element of that decision: an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue *and there was abundant and uncontroverted independent evidence that no discrimination had occurred*. *Reeves*, at 148 (emphasis added).

In other words, the Supreme Court in *Reeves* set out two conditions which, in combination, would make summary judgment appropriate: (1) a "weak issue of fact" regarding the truth of the employer's justification, and (2) "abundant and uncontroverted independent evidence that no discrimination occurred." *See Id*. Here, the district court ignored the second condition and did not acknowledge that Green's case presents more than a mere weak issue of fact. ROA.1244; RE.29. Green's evidence directly challenges the credibility of the employer's proffered explanations. ROA.846-52; RE.34-40. Moreover, the failure to document these reasons—while Green received a positive mid-year evaluation—further undermines the credibility of HCTec's justification. This is not a case where the evidence against the employer's reasoning is "weak"; rather, Green has provided substantial evidence that raises a genuine dispute of material fact regarding whether the stated reasons for her termination were pretextual. *Id. Caldwell v.*

29

*KHOU-TV*, a relevant Fifth Circuit case which cited *Reeves*, highlights the necessary conditions for summary judgment and demonstrates a proper use of *Reeves*:

> Further, this case does not present the sort of "rare instance" where the plaintiff has only presented "a weak issue of fact as to whether the employer's reason was untrue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *see also Laxton*, 333 F.3d at 578. Nor is there "abundant and uncontroverted independent evidence that no discrimination ha[s] occurred." *Reeves*, 530 U.S. at 148; *see also Laxton*, 333 F.3d at 578. Here, Caldwell has presented evidence other than his own assertions in support of his arguments which together raise a genuine issue of material fact as to whether the reasons the Defendants gave for terminating Caldwell were pretextual. Accordingly, we hold that the district court erred in granting summary judgment in favor of the Defendants on Caldwell's ADA claim. *Caldwell v. KHOU-TV,* 850 F.3d 237, 245 (5th Cir. 2017) (reversing summary judgment for Defendants).

Therefore, the district court's reliance on *Reeves* for this issue was flawed. The case does not involve the sort of rare "weak issue of fact" combined with strong evidence *against* discrimination that would justify summary judgment. Rather, as in *Laxton* and *Caldwell*, Green's case presents substantial evidence that creates a genuine issue of material fact about the legitimacy of the employer's reasons for her termination. Because there is no "abundant and uncontroverted" evidence that disproves discrimination, the district court should not have granted summary judgment.

## C.   Green Provided Sufficient Evidence that She Was Retaliated Against.

The district court explained that there are three elements to a prima facie case of retaliation: the employee's participation in a protected activity (i.e., complaining about discrimination), an adverse employment action taken against the employee (e.g., termination), and a causal connection between the protected activity and the adverse action. ROA.1245; RE.30. It is undisputed that the first two elements are met: Green complained about discrimination and she was terminated. *Id.* The district court then explained:

> The last element of a prima facie case of retaliation requires Green to show the causal connection between her protected activity and her termination. The time between these two events is approximately two and a half months, or ten weeks.
> …
> The court assumes that the time period between her protected activity and her termination supports an inference of causation. The burden then shifts to HCTec to articulate a legitimate, non-retaliatory reason for Green's termination. ROA.1245-46; RE.30-31.

So, as with discrimination, the district court found that Green made a prima facie case of retaliation, thus shifting the burden to HCTec to justify terminating her. HCTec provided reasons that are the same pretextual reasons that they provided for the discrimination case. *Id*. After the employer provides a legitimate reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation. *Garcia v. Pro. Cont. Servs., Inc.*, 938

31

F.3d 236, 241 (5th Cir. 2019). Green has disputed all of the reasons cited by HCTec, as described above, see *supra.*. The district court's decision cites the same reasons for termination that Green has painstakingly rebutted. ROA.1246; RE.31.

As discussed above, the reasons HCTec has given for Green's termination are clearly pretextual and intended to disguise discriminatory intent. Because these same reasons lack credibility and are pretexts for discrimination, they also serve as pretexts for retaliatory termination. See *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 621 (5th Cir. 2020) (reversing district court's grant of summary judgment for employer where question of whether [employee's] termination was pretext for unlawful retaliation remains a disputed issue of fact).

## D.     Green Provided Strong Evidence of a Hostile Work Environment Based on Race, Sex, and Retaliation.

While HCTec's discriminatory decision to terminate Green is a crucial part of her case, it is not her whole case. Green has shown not only that her termination was discriminatory and retaliatory, but also that HCTec's treatment of her in the months and years *prior* to her termination was discriminatory and retaliatory, constituting a hostile work environment.

To show that a hostile work environment existed, Green must show that she (1) is a member of a protected class, (2) that she suffered harassment, (3) that the harassment was based on her membership in a protected class, (4) that the

harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. The district court adopted this analysis. ROA.1246; RE.31 (citing, *inter alia*, *Wantou v. Wal-Mart Stores Tx., LLC*, 23 F.4th 422, 433 (5th Cir. 2022)). When a supervisor is the harasser, the employee need not establish the fifth element. *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 221 (5th Cir. 2023).

The district court's opinion found that Green's facts do not support allegations of a hostile work environment, "at least when not accompanied by evidence of sex or race-based animus." ROA.1248; RE.33. However, the district court found that Green made a prima facie case of race and sex discrimination, thus proving that there *was* discriminatory animus. ROA.1243; RE.28. In the case cited by the district court, *Hiner v. McHugh*, this Court explained that "[w]hether an environment is hostile or abusive depends on the totality of the circumstances, including…whether it unreasonably interferes with an employee's ability to perform his job." 546 Fed.Appx. 401, 408 (2013). Here, HCTec deliberately made Green's job more difficult after she voiced concerns about discrimination and interfered with her ability to do her job. Green complained in February 2021 that Rush was treating her much less favorably than Noland–despite the fact that they were in similar positions. ROA.1235; RE.20. Rush and HCTec responded not by

33

easing up, but rather by making her work even more difficult: Green was asked to deal with misbehaving subordinates with little or no help from her supervisors or coworkers, which only led to further problems. ROA.848-49; RE.36-37.

And, even if this Court agrees with the district court that "Green's allegations that she was ignored and given a heavy workload" do not neatly fit the definition of a hostile work environment, they do support a finding of discrimination and especially retaliation more broadly. *See Burlington Northern & Santa Fe. Ry. v. White*, 548 U.S. 53, 70-71 (2006) (holding that giving an employee more difficult tasks supported a retaliation finding because "[c]ommon sense suggests that one good way to discourage an employee…from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable").

## CONCLUSION

Based upon the foregoing arguments and authorities, Karen Green, Appellant, asks this Court to reverse the judgment of the district court and remand for a trial on the merits.

Respectfully submitted:

/s/ *Bruce A. Coane*

Bruce A. Coane
Texas Bar No. 04423600
bruce.coane@gmail.com
COANE AND ASSOCIATES, PLLC
5177 Richmond Ave., Suite 770
Houston, TX 77056
Telephone: (713) 850-0066
Fax: (832) 558-1780

# CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing document by filing the same with the Court's CM/ECF electronic filing system on February 9, 2025, which will send notification of such filing to all counsel of record.

/s/*Bruce A. Coane*
Bruce A. Coane

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 6437 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Google Documents in Times New Roman 14-point font.

s/*Bruce A. Coane*
Bruce A. Coane