**Case No. 24-20554**

---

**In the
United States Court of Appeals
For the Fifth Circuit**

---

**KAREN GREEN,
PLAINTIFF - APPELLANT**

**V.**

**HCTec PARTNERS, L.L.C.
DEFENDANT - APPELLEE.**

---

**On Appeal from the United States District Court
for the Southern District of Texas**

---

**APPELLEE'S BRIEF ON THE MERITS**

---

Victor N. Corpuz
Texas Bar No. 04838450
Victor.Corpuz@jacksonlewis.com
David A. Scott
Texas Bar No. 17894515
David.Scott@jacksonlewis.com

JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201
Phone: (214) 520-2400
Facsimile: (214) 520-2008

**ATTORNEYS FOR APPELLEE**

**Case No. 24-20554**

---

**In the
United States Court of Appeals
For the Fifth Circuit**

---

**KAREN GREEN,
APPELLANT**

**V.**

**HCTec PARTNERS, L.L.C.,
APPELLEE.**

---

**On Appeal from the United States District Court
for the Southern District of Texas**

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

i

Karen Green – Appellant

Bruce A. Coane                                      Trial and Appellate Counsel for
COANE AND ASSOCIATES, P.L.L.C.                      Karen Green
5177 Richmond Avenue, Suite 770
Houston, TX 77056
(713) 850-0066 (Telephone)
Email:  bruce.coane@gmail.com

HCTec Partners, LLC.  – Appellee

Victor N. Corpuz                                    Trial and Appellate Counsel for
David A. Scott                                      HCTec Partners, LLC
Tonika G.E. Brown
JACKSON LEWIS P.C.
500 North Akard, Suite 2500
Dallas, Texas 75201
(214) 520-2400
(214) 520-2008 (Facsimile)
Victor.Corpuz@jacksonlewis.com
David.Scott@jacksonlewis.com

HCTec Partners LLC

Respectfully Submitted,

/s/ *Victor N. Corpuz*

Victor N. Corpuz
Attorney for Appellee,
HCTec Partners, LLC

iii

## STATEMENT REGARDING ORAL ARGUMENT

The District Court correctly granted summary judgment on all claims, and the judgment can be affirmed based on a review of the record. Oral argument is not necessary.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................... iv

TABLE OF CONTENTS .........................................................................................v

I.    STATEMENT OF THE JURISDICTION ........................................................1

II.    STATEMENT OF THE ISSUES ....................................................................1

III.    STATEMENT OF THE CASE ........................................................................2

    A.    Procedural Background ........................................................................2

    B.    Factual Background ..............................................................................2

        1.    HCTec's Business ......................................................................2

        2.    Green's employment with HCTec ..............................................3

        3.    Green's Promotion to Tier 2 Manager ........................................3

        4.    Green's Poor Performance and Poor Judgment Leading to her Termination ................................................................................4

        5.    Green's Complaint of Discrimination ........................................6

IV.    SUMMARY OF THE ARGUMENT ..............................................................7

V.    STANDARD OF REVIEW .............................................................................7

VI.    ARGUMENT ..................................................................................................8

    A.    The District Court Correctly Granted Summary Judgment on Green's Race and Sex Discrimination Claims ...................................................8

        1.    The District Court Correctly Applied the *McDonnell Douglas* Burden-Shifting Framework. ......................................................8

2.      The District Court Correctly Concluded that HCTec Met its Burden of Production. ................................................................9

3.      Green Understates Her Burden to Establish Pretext. ................10

4.      Green's Pretext Arguments Fail. .............................................11

5.      The District Court Correctly Concluded that Green Failed to Raise a Material Fact Issue as to Pretext as Required to Avoid Summary Judgment. ...............................................................14

B.      The District Court Correctly Granted Summary Judgment on Green's Retaliation Claim................................................................................16

C.      The District Court Correctly Granted Summary Judgment on Green's Hostile Work Environment Claim ...............................................................18

1.      The Elements of an Actionable Hostile Work Environment Claim ................................................................................18

2.      The District Court Correctly Concluded that Green Failed to Meet this Demanding Standard................................................19

VII.    CONCLUSION................................................................................21

CERTIFICATE OF SERVICE .........................................................................23

CERTIFICATE OF COMPLIANCE ................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................8

*Aryain v. Wal-Mart Stores Texas LP*,
534 F.3d 473 (5th Cir. 2008) ...................................................8

*Brown v. CSC Logic, Inc.*,
82 F.3d 651 (5th Cir. 1996)....................................................16

*Bryant v. Compass Grp. USA Inc.*,
413 F.3d 471 (5th Cir. 2005) .................................................14

*Clark v. Champion Nat'l Security, Inc.*,
952 F.3d 570 (5th Cir. 2020).................................................14

*EEOC v. Boh Bros. Constr. Co., L.L.C.*,
731 F.3d 444 (5th Cir. 2013).................................................19

*EEOC v. LHC Group, Inc.*,
773 F.3d 688 (5th Cir. 2014).................................................10

*EEOC v. Texas Instruments Inc.*,
100 F.3d 1173 (5th Cir. 1996) ...............................................12

*Engstrom v. First Nat'l Bank*,
47 F.3d 1459 (5th Cir. 1995) ...................................................8

*Fahim v. Marriott Hotel Servs.*,
551 F.3d 344 (5th Cir. 2008)....................................................7

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)................................................................19

*Faruki v. Parsons S.I.P., Inc.*,
123 F.3d 315 (5th Cir. 1997)..................................................16

*Garcia v. Prof'l Contract Services, Inc.*,
938 F.3d 236 (5th Cir. 2019) .................................................17

*Goudeau v. Nat'l Oilwell Varco, L.P.*,
  793 F.3d 470 (5th Cir. 2015) ........................................................................10

*Haun v. Ideal Indus., Inc.*,
  81 F.3d 541 (5th Cir. 1996)............................................................................16

*Indest v. Freeman Decorating, Inc.*
  164 F.3d 258 (5th Cir. 1999)..........................................................................19

*January v. City of Huntsville*,
  74 F.4th 646 (5th Cir. 2023) ..............................................................16, 17, 18

*Laxton v. Gap, Inc.*,
  333 F.3d 572 (5th Cir. 2003) ............................................................................9

*Moss v. BMC Software, Inc.*,
  610 F.3d 917 (5th Cir. 2010) ............................................................................8

*Owens v. Circassia Pharms., Inc.*,
  33 F.4th 814 (5th Cir. 2022) ....................................................................*passim*

*Reeves v. Sanderson Plumbing Prods.*,
  530 U.S. 133 (2000).........................................................................................9

*Rollins v. Home Depot USA, Inc.*,
  8 F.4 .................................................................................................................20

*Salazar v. Lubbock Cty. Hosp. Dist.*,
  982 F.3d 386 (5th Cir. 2020) ....................................................................12, 16

*St. Mary's Honor Center* v. *Hicks*,
  509 U.S. 502 (1993).........................................................................9, 10, 11, 21

*Texas Dep't. of Cmty. Affairs v. Burdine*,
  450 U.S. 248 (1981).........................................................................................9

**Statutes**

42 U.S.C. § 1981 ....................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 56(c)...............................................................................................8

## I.      STATEMENT OF THE JURISDICTION

HCTec Partners, LLC ("HCTec" or "Appellee") agrees with Karen Green's ("Green") statement of jurisdiction in this case.

## II.      STATEMENT OF THE ISSUES

The ultimate issue before the Court is whether the District Court correctly granted summary judgment on Green's claims for sex discrimination, race discrimination, and retaliation. HCTec contends that the District Court correctly concluded that HCTec was entitled to judgment as a matter of law on all claims. HCTec joins the order of issues presented in Green's Brief, with the following revised statement of issues:

**Issue One:** Did the District Court err in concluding that Green failed to show that HCTec's reasons for terminating her employment were a pretext for race and sex discrimination?

**Issue Two:** Did the District Court err in concluding that Green failed to show that HCTec's reasons for terminating her employment were a pretext for retaliation?

**Issue Three:** Did the District Court err in granting summary judgment on Green's claim for hostile work environment based on race and sex?

**Issue Four:** Alternatively, was the District Court's grant of summary judgment proper based on any other grounds asserted in HCTec's motion for summary judgment?

### III.    STATEMENT OF THE CASE

**A.    Procedural Background**

This case arises from Green's employment with HCTec. After her employment was terminated on May 13, 2021, Green filed a charge of discrimination with the EEOC on September 2, 2021. The EEOC issued a notice of right to sue on May 6, 2022. (ROA.15-16). Green then filed this lawsuit asserting claims under Title VII and 42 U.S.C. § 1981 for race discrimination, sex discrimination, hostile work environment, and retaliation. (ROA.14).

HCTec filed its Motion for Summary Judgment on July 10, 2024. (ROA.711-737). Green filed her Response to the Motion for Summary Judgment on July 31, 2024 (ROA.809-837), and HCTec filed a Reply on August 7, 2024. (ROA.1169-1189). On August 15, 2024, the District Court issued a Memorandum and Opinion granting summary judgment on all claims. (ROA.1234-1248). The District Court subsequently entered a Final Judgment dismissing Green's claims with prejudice. (ROA.1271).[1] This appeal followed. (ROA.1276-1277).

**B.    Factual Background**

**1.    HCTec's Business**

HCTec provides IT workforce optimization solutions, including specialized skills-staffing, consulting, and managed services to healthcare organizations

---

[1] HCTec filed counterclaims against Green. Those claims were severed and remain as a separate action. (ROA.1271).

throughout the country. (ROA.751, 1227).  HCTec is headquartered in Tennessee but employs individuals across the country. (ROA.15).

### 2.     Green's employment with HCTec

Green began her employment with HCTec on April 23, 2018 as a Tier 2 Team Lead with the Managed Services Application Support Team. (ROA.751, 854). Throughout her employment, Green reported to Bernard Rush, the Director of Application Support. (ROA.847,1227). Rush is African American. (ROA.973). Rush interviewed Green and recommended that she be hired for the Team Lead position. (ROA.921-923). In her role as Team Lead, Green was responsible for assigning and monitoring completion of the build, test, validation, and implementation of client service requests and incident management within a client's health record system and other designated applications. (ROA.771-772).  Green worked remotely. (ROA.846).

### 3.     Green's Promotion to Tier 2 Manager

After Green performed well as a Team Lead, Rush was involved in the decision to promote Green to Tier 2 Manager beginning on January 24, 2021. (ROA.997, 752). Following her promotion, Green continued to report to Rush and she worked alongside another Tier 2 Manager, Ryan Noland. (ROA.1228). Green was responsible for managing six teams and six Managing Leads, and Noland was responsible for managing four teams and four Managing Leads. (ROA.1228). Rush

3

explained that he made the team assignments based on the experience levels of the two Tier 2 Managers and to ensure the workload was split proportionately based on the size of the teams. (ROA.1228, 784). Green did not express concerns to Rush that she handled a disproportionate amount of work or that she was required to work more hours. (ROA.1228).

### 4.    Green's Poor Performance and Poor Judgment Leading to her Termination

Although Green appeared qualified and ready for the promotion to the Tier 2 Manager role, Rush, and others, quickly realized she lacked the ability to be a successful manager at HCTec. The concerns culminated with two incidents occurring on May 13, 2021 which led to Rush's decision to terminate Green's employment. (ROA.932-934, 1229-1230). Rush explained the incidents in his Declaration (ROA.1229-1230):

> On May 13, 2021, Green called me about concerns with placing analyst Hasheem Reddick ("Reddick") on a performance improvement plan. During our call, Green disclosed concerns with Reddick's national origin and religion and made statements about his "culture" and how she felt he would treat women. Green also specifically told me not to reach out to managing lead Dane Young ("Young") about our conversation. However, Green's teams message reflects the inappropriate bias she acknowledged by saying "and of course since I am female, question." I reached out to Young in order to learn more about these concerns. Young explained that he did not have any personal concerns with Reddick or his culture at all – rather, that Reddick's bold personality could result in a contentious discussion. Young also informed me that he did not request my attendance on the call. Young requested that Green attend the call as part of routine company procedure. Green's attendance during a performance

4

improvement plan was well within her job description. Her discriminatory assumption of Reddick created potential liability for HCTec.

On May 13, 2021, Karen Green contacted me about the Centura Director's request to have an additional analyst assigned to the project. Centura is a large client of HCTec. During the call and in a previous email, I approved Centura's request to add a second analyst. Green expressed her disagreement with my approval in a defiant nature and proceeded to undermine my decision by continuing to communicate to Centura her reasons for why she did not want to add a second analyst. The e-mail exchange between Green and HCTec Client Services Manager, Brandi Brock, displayed a lack of unity and inappropriate communication on the part of Green because it questioned my judgment and director authority. In short, Green was insubordinate and defiant.

At the time of this exchange we were in the process of negotiating a renewal of our contract with Centura. As the application director, I had personal knowledge of the client relationship with Centura. I was concerned that any dissension and insubordinate conduct on Green's part would impact contract renewal negotiations in a negative way.

Based on all of the issues that occurred and the severity of the disruption in client relations, I secured the support from Human Resources to terminate Green. Mayolo's only role in termination was to provide human resources support as I made the decision to terminate Green. (ROA.1229-1230).

Bernard partnered with his Senior Human Resources Business Partner, Tracye Mayolo. Mayolo provided a recap of the incidents leading to Green's termination on May 13, 2021. (ROA.800-801). Rush and Mayolo informed Green of the termination decision by a phone conversation on May 13, 2021. (ROA.801).

5

### 5.    Green's Complaint of Discrimination

Green has identified Rush as the person she feels discriminated against her because of her race and sex. (ROA.762). She admits that she had no issues with Rush in the first two and a half years that she was supervised by Rush as a Team Lead. Instead, Rush's alleged discrimination against her because she is "Black and female" started after Rush promoted her to the Tier 2 Manager position. (ROA.762, 768). Green testified that Rush subjected her to a "hostile work environment" by giving her more work than Noland, by taking work from Noland and putting it on her plate, and by asking her questions about her work. (ROA.755). Rush never yelled at her or made derogatory comments about her race. (ROA.755). Green asserts that Rush discriminated against her by not responding to her questions, ignoring her responses, and badgering her about her work and completion of work tasks. (ROA.763).

Green reported her concerns about race and sex discrimination to Mayolo in Human Resources shortly after her promotion to manager. (ROA.768). When Mayolo initially called Green to discuss her concerns, Green only mentioned her frustration with the fact that Rush did not respond promptly to her questions, but he was responsive to Noland's questions. (ROA.764). About a week later, Mayolo arranged a Teams meeting with Rush, Green and Mayolo to discuss the issue. (ROA.765).  Rush did not say anything that Green considered to be discriminatory during that meeting. (ROA.766).

## IV.   SUMMARY OF THE ARGUMENT

Green claims that Rush, her African American supervisor, who hired and promoted her, intentionally discriminated against her by subjecting her to a hostile work environment and then by discharging her because of her race (African American) and her sex.  The primary issue in this appeal is whether Green met her burden to show that HCTec's stated non-discriminatory reasons for her termination are a pretext for race discrimination, sex discrimination, or retaliation. The District Court addressed Green's pretext arguments and correctly determined that she failed to carry her burden to avoid summary judgment on the pretext issue. The District Court also correctly dismissed Green's hostile work environment claim because Green failed to present evidence that HCTec engaged in any severe or pervasive conduct based on race or sex as required for an actionable hostile work environment claim. The District Court's grant of summary judgment should be affirmed.

## V.   STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment *de novo* applying the same standard as the district court. *Fahim v. Marriott Hotel Servs.,* 551 F.3d 344, 348-349 (5th Cir. 2008) (*citing Berquist v. Washington Mut. Bank,* 500 F.3d 344, 348 (5th Cir. 2007)).  Summary judgment is appropriate when the summary judgment record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1462 (5th Cir. 1995). This Court may "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 478 (5th Cir. 2008).

## VI.　ARGUMENT

**A.　The District Court Correctly Granted Summary Judgment on Green's Race and Sex Discrimination Claims.**

**1.　The District Court Correctly Applied the *McDonnell Douglas* Burden-Shifting Framework.**

Because Green has presented no direct evidence of race or sex discrimination, the District Court properly analyzed her claims using the *McDonnell Douglas* burden-shifting framework. *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022). On page 16 of her Brief, Green concedes that this framework applies to her claims at the summary judgment stage. Under that framework, the plaintiff must make out a prima facie case of discrimination. *Id*. If the plaintiff successfully meets the elements of a prima facie case, the employer must respond with a

legitimate, non-discriminatory reason for terminating the plaintiff. *Id*. The employer's burden is one of production, not persuasion; it "can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 142 (2000) (citing *St. Mary's Honor Center* v. *Hicks,* 509 U.S. 502, 506 (1993)).

To avoid summary judgment, the plaintiff must then produce substantial evidence that the employer's articulated reasons are a pretext for discrimination. *Owens*, 33 F.3d at 825. On page 16 of her Brief, Green concedes that she must show that each of HCTec's reasons for discharging her are pretextual. See, e.g. *Laxton v. Gap, Inc*., 333 F.3d 572, 578 (5th Cir. 2003) (to carry the pretext burden, the plaintiff must rebut each nondiscriminatory reason articulated by the employer). The plaintiff bears the ultimate burden at all times to prove that she was subjected to intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000); *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The District Court correctly used this same burden-shifting framework to analyze Green's employment discrimination claims under Title VII and §1981. *See Owens*, 33 F.3d at 825.

### 2. The District Court Correctly Concluded that HCTec Met its Burden of Production.

The District Court correctly determined that HCTec articulated legitimate, non-discriminatory reasons for terminating Green's employment – specifically, Green's poor performance and insubordinate conduct. *See Owens*, 33 F.3d at 826

9

(poor performance is a legitimate, non-discriminatory reason); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (plaintiff's poor job performance was a legitimate, non-discriminatory reason for his termination). Green does not dispute that HCTec met its burden of production. As the District Court properly analyzed, it was then Green's burden to show that HCTec's articulated reasons are pretextual.

**3.    Green Understates Her Burden to Establish Pretext.**

At pages 22 through 24 of her Brief, Green argues that she did not have to show that HCTec's reasons for discharging her were false in order to show pretext. However, the Supreme Court has held that "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown <u>*both*</u> that the reason was false, <u>*and*</u> that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis added); *accord EEOC v. LHC Group, Inc.,* 773 F.3d 688, 701 (5th Cir. 2014). Green's claims fail on both counts. In affirming summary judgment for the employer on similar discrimination and retaliation claims, this Court recently emphasized that the plaintiff at the pretext stage must present "substantial evidence" that the employer's proffered reasons for discharging her are pretext for discrimination or retaliation. *See Owens*, 33 F.4th at 826.

This Court observed that employment discrimination laws do not transform federal courts into human resource managers, so the inquiry is not whether the

10

employer made a wise or even a correct decision to terminate the plaintiff. *Id.* Rather, the inquiry is whether the employer acted with discriminatory (or retaliatory) animus. *See Id.*[2] Thus, the plaintiff is required to present evidence of pretext that is of sufficient "nature, extent, and quality" to reasonably infer that discrimination was the employer's real motivation. *See id.* The District Court correctly concluded that Green failed to present sufficient evidence of pretext based on the record. (ROA.1243-1245).

### 4.    Green's Pretext Arguments Fail.

In her Brief, Green argues that she met her burden on the pretext issue. First, she suggests that because the District Court disagreed with HCTec's arguments regarding the prima facie case elements, it follows that HCTec's reasons for her termination are not credible. Green confuses the different stages of the *McDonnell Douglas* framework. The first stage of the analysis is the prima facie case. The District Court found that Green satisfied the elements of a prima facie case, and it disagreed with some of HCTec's arguments in doing so. (ROA.1240-1242). However, that does not mean that the reasons articulated by HCTec for Green's termination are false or a pretext for discrimination. Once HCTec met its burden of

---

[2] Green correctly acknowledges this principle on page 24 of her Brief, where she states: Title VII is meant to protect employees from discrimination based on protected traits; it is not meant to protect employees from employer mistakes which are not motivated by discriminatory attitudes.

production, any presumption of discrimination "dropped out of the picture," and Green had the burden to show pretext. *See Hicks*, 509 U.S. at 510-511.

Second, Green argued that HCTec failed to follow its progressive discipline policy in terminating Green. The District Court properly concluded that an alleged failure to follow policy was not enough to show pretext. (ROA.1244). *See EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996). Furthermore, this Court has held that the employer's departure from a progressive discipline policy is of little value to the court's pretext analysis where the policy specifically provided for the employer's discretion to determine the appropriate level of discipline based on the particular facts and circumstances. *See Salazar v. Lubbock Cty. Hosp. Dist.*, 982 F.3d 386, 391 (5th Cir. 2020). That is exactly the case here. HCTec's Corrective Action/Progressive Discipline policy expressly states that HCTec has "sole and complete discretion" to skip steps and to determine the appropriate level of discipline based on the facts of each situation. (ROA.897). Therefore, like the employer in the *Salazar* case, HCTec did not have to follow the progressive steps set out in the policy. *See id.*

Third, Most of Green's pretext arguments are simply her disagreement with HCTec's assessment of her performance and the importance of the specific incidents leading to her termination. For example, Green acknowledges that she sent the Teams message ("I am done") on May 13, 2021 in connection with her supervision

of a subordinate employee. She further acknowledges that her supervisor (Rush) and the HR Business Partner (Mayolo) deemed the message to be inappropriate. Nevertheless, Green argues that this performance incident is a pretext because she disagrees with her supervisor's perception of the message and because she claims she was not given an opportunity to explain the message. (Green's Brief, pages 18-19; ROA.850-851).

Similarly, Green admits that she sent an email to a client (Centura) that Rush found to be inappropriate and insubordinate. (Green's Brief, page 19; ROA.781-783; ROA.877-879). However, Green disagrees with her supervisor's assessment that the email was inappropriate. Green further attempts to minimize the incident by arguing that the client never complained about the email and that HCTec offered no evidence that its business relationship with the client was harmed by Green's email. (Green's Brief, p. 19). That is beside the point. Green's disagreement with HCTec's concerns over Green's poor judgment and insubordinate conduct (as a manager) in sending the email does not show that the concerns were false or a pretext for a discriminatory or retaliatory motive.

This Court has consistently held that "[m]ere disputes over an employer's assessment of an employee's performance do not create issues of fact" as to pretext. *See, e.g., Owens,* 33 F.3d at 831, 826 (affirming summary judgment for employer and holding that employers are "entitled to be unreasonable" in terminating their

13

employees "so long as [they] do not act with discriminatory animus"); *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones."); *Clark v. Champion Nat'l Security, Inc.*, 952 F.3d 570, 589, n. 82 (5th Cir. 2020) (affirming summary judgment and noting that it is not the ultimate accuracy of the employer's reason that matters, but only whether the employer believed in good faith that the employee engaged in the conduct leading to termination).

5.    **The District Court Correctly Concluded that Green Failed to Raise a Material Fact Issue as to Pretext as Required to Avoid Summary Judgment.**

Green asserts that she presented evidence of factual discrepancies in HCTec's reasons for termination that are sufficient to avoid summary judgment. As the District Court correctly pointed out, there is uncontroverted evidence in the record showing that "[Green] did refuse to perform her job duties of working with a subordinate employee; that she did make inappropriate comments about that employee's culture and ethnicity; and that she did post the message "I'm done" on Microsoft Teams." (ROA.1244). However, even if Green presented evidence that contradicts some of the factual bases leading to her termination, that would not be enough to avoid summary judgment on this record.

14

In affirming summary judgment for the employer, this Court recently observed:

> Owens has accordingly presented evidence that directly and specifically contradicts several factual bases for her placement on the PIP and her eventual termination. Although there are alternative explanations for some of this evidence, reasonable inferences are drawn in favor of Owens. [citation omitted] Thus a reasonable trier of fact could find that Circassia's proffered justification for terminating Owens is false. But that alone is not enough. The evidence must permit a reasonable inference that Circassia's false reason was a pretext for the true, discriminatory reason. [citations omitted].
> *Owens*, 33 F.4th at 833.

This Court further explained that, despite the plaintiff's evidence permitting a finding that the employer's reason was false, summary judgment was still appropriate because the plaintiff presented only a scintilla of evidence that the true reason for her termination was discriminatory animus. *See Owens*, 33 F.4th at 834 (holding that summary judgment for the employer was appropriate because the plaintiff's evidence was of insufficient "nature, extent, and quality" to permit a reasonable factfinder to resolve the ultimate determination of discrimination in the plaintiff's favor).

The plaintiff in the *Owens* case presented far more evidence of pretext than Green did here. But the result is the same – the District Court correctly concluded that Green failed to present sufficient (let alone substantial) evidence permitting a reasonable inference that her race or sex was what really motivated HCTec's termination decision. That conclusion is further bolstered by the fact that Rush,

Green's supervisor and the decisionmaker, is also African American. *See, e.g., Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (the "same-actor inference" creates a presumption that discriminatory animus was not present where, as here, the same actor responsible for the alleged adverse employment action hired and supervised the plaintiff); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 321 n.3 (5th Cir. 1997); *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996).

The District Court correctly granted summary judgment for HCTec on the race and sex discrimination claims and that judgment should be affirmed. *Accord Salazar*, 982 F.3d at 391-392 (affirming summary judgment where plaintiff failed to present sufficient evidence showing that the employer's proffered reason of poor performance was a mere pretext for discrimination); *Owens*, 33 F.4th at 834 (same).

## B.    The District Court Correctly Granted Summary Judgment on Green's Retaliation Claim

Green devotes only a page and a half of her Brief to the retaliation claim. (See pages 31 and 32 of the Brief). As with the discrimination claims, Green concedes on page 31 of her Brief that she has no direct evidence of retaliation and that the same burden-shifting framework should be used to analyze the retaliation claim. The elements of a prima facie case of retaliation are as follows: (1) engagement in protected activity, (2) an adverse employment action, and (3) a causal connection between the two. *See January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023). If the plaintiff meets the elements of a prima facie case, the employer must come

16

forward with a legitimate, non-discriminatory reason for the adverse action. *Id.* Once it does, the plaintiff must then show sufficient evidence that the proffered reason is a pretext for retaliation. *Id.*

The District Court assumed that Green met the prima facie elements and moved to the pretext stage.[3] As noted in connection with the discrimination claims, Green does not contest that HCTec produced legitimate, non-retaliatory justifications for her discharge. To survive summary judgment, Green must now show that her protected act "was a 'but for' cause of" her termination. *See id*. at 654 (citing *Owens*, 33 F.4th at 835); *see also Garcia v. Prof'l Contract Services, Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (the plaintiff has the burden to demonstrate that the employer's reason is actually a pretext for retaliation by showing that the adverse action would not have occurred but for the employer's retaliatory motive). Green must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reasons are a pretext for retaliation. *See January*, 74 F.4th at 654.

Green relies on the same facts and pretext arguments that she offered in support of her discrimination claims in an attempt to meet the pretext element for the retaliation claim. The District Court, therefore, correctly determined that Green

---

[3] The District Court assumed that the time proximity of more than three months between the alleged protected activity and Green's termination supports an inference of causation sufficient to make a prima facie case. (ROA.1245-1246). While close timing may support a prima facie showing, this Court has made clear that timing alone is not sufficient to establish pretext or retaliation. *See January*, 74 F.4th at 656 ("We have said temporal proximity isn't enough.")

failed to show that HCTec's reasons for her discharge are a pretext for retaliation and failed to show that she would not have been terminated but for her protected activity. In the page and a half of Green's Brief discussing the retaliation claim, she fails to cite to any evidence of any retaliatory motive by HCTec. Summary judgment on the retaliation claim should be affirmed. *Accord January*, 74 F.4th at 654-656 (affirming summary judgment for employer on retaliation claim and noting that none of the evidence provided by the plaintiff "make[s] the inferential leap to [retaliation] a rational one"); *Owens*, 33 F.4th at 834-835 (affirming summary judgment for employer on retaliation claims under Title VII and §1981 where plaintiff relied on same arguments to show pretext that failed in connection with her discrimination claims).

**C.  The District Court Correctly Granted Summary Judgment on Green's Hostile Work Environment Claim**

**1.  The Elements of an Actionable Hostile Work Environment Claim**

Green devotes a scant two pages of her Brief to the hostile work environment claim. She acknowledges on page 32 of her Brief that the alleged harassment must be based on her membership in a protected class – here, her race and sex. But much more is required. For harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." *See Hernandez v. Yellow Transp.,* Inc., 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

18

In determining whether an environment is "hostile" or "abusive," courts look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift*, 510 U.S. 17, 23 (1993)). Simple teasing, offhand comments, sporadic use of offensive language, occasional jokes related to a claimant's protected trait, and isolated incidents (unless extremely serious) will generally not amount to discriminatory changes in the terms and conditions of employment. *See EEOC v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 461 (5th Cir. 2013).

Moreover, a hostile work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998) (citing *Harris,* 510 U.S. at 21-22); *see also Indest v. Freeman Decorating, Inc.* 164 F.3d 258, 263-64 (5th Cir. 1999). These demanding standards are required to ensure that the employment discrimination statutes do not become a "general civility code." *See Faragher*, 524 U.S. at 788.

### 2. The District Court Correctly Concluded that Green Failed to Meet this Demanding Standard

In the two pages of her Brief addressing the hostile work environment claim (Brief, pages 32-34), Green makes only vague, conclusory allegations about her

19

"treatment" – that HCTec made her job more difficult and interfered with her ability to do her job, treated her less favorably than a male manager, and asked her to deal with misbehaving subordinates with little or no help from her supervisors or coworkers. She offers no factual details; nor does she cite to any record evidence supporting the hostile work environment claim. The Court should not address this claim because Green has failed to adequately brief the argument. *See Rollins v. Home Depot USA, Inc.*, 8 F.4 th 393, 397 n. 1 (5th Cir. 2021) (discussing the various ways that a party can fail to present an issue for appellate review).

But even if the Court reaches the merits, the claim fails as a matter of law. The District Court summarized the alleged harassing conduct in its order – allegations that Rush was dismissive, ignored Green's requests for information, questioned her about completion of work tasks, assigned her heavier workloads, assigned her to a work project that she was not certified to handle, and failed to provide her with coaching and progressive discipline before termination. (ROA.1247). The District Court correctly concluded that these incidents are ordinary tribulations of the workplace that were not sufficiently severe, pervasive, or abusive, as a matter of law, to create an actionable hostile work environment. (ROA.1247). The District Court also correctly noted that the incidents were not accompanied by evidence of sex or race-based animus, as required. (ROA.1248).

On page 33 of her Brief, Green suggests that she proved discriminatory animus because the District Court concluded that she made a prima facie case of race and sex discrimination. Green again improperly conflates two different claims. The District Court did find that Green met the basic elements of a prima facie case of race and sex discrimination regarding her termination. (ROA.1243). That raises a rebuttable presumption of discrimination which was defeated when HCTec produced the legitimate, non-discriminatory reasons for her termination. *See Hicks*, 509 U.S. at 510-511. That defeated presumption has no bearing on Green's separate burden to show that any alleged harassing conduct that she claims constitutes an actionable hostile work environment was based on her race and gender. Two different claims, two different issues.

The hostile work environment claim fails as a matter of law for multiple reasons. Thus, the District Court correctly granted summary judgment on that claim.

## VII.   CONCLUSION

Green's claims for race and sex discrimination fail because she did not establish that HCTec's reasons for her termination are a pretext for race and gender discrimination. Likewise, the retaliation claim fails because she did not show that HCTec's articulated reasons are a pretext for retaliation. Finally, Green presented no evidence to show that she was subjected to an actionable hostile work environment

based on her race or sex. The summary judgment rendered by the District Court should be affirmed in all respects.

Respectfully submitted,

/s/ Victor N. Corpuz
Victor N. Corpuz
Texas Bar No. 04838450
Victor.Corpuz@jacksonlewis.com
David A. Scott
Texas Bar No. 17894515
David.Scott@jacksonlewis.com

JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201
Phone: (214) 520-2400
Facsimile: (214) 520-2008

**ATTORNEYS FOR APPELLEE**

22

## __CERTIFICATE OF SERVICE__

I hereby certify that a true copy of the foregoing document was served electronically through the electronic filing system of the Court to the following counsel of record on April 25, 2025, as follows:

Bruce A. Coane
COANE AND ASSOCIATES, P.L.L.C.
5177 Richmond Avenue, Suite 770
Houston, Texas 77056
Email:  bruce.coane@gmail.com

_/s/ Victor N. Corpuz_
VICTOR N. CORPUZ

23

# CERTIFICATE OF COMPLIANCE

I hereby certify that Appellee's Brief complies with the word-count limitations of FED. R. APP. P. 32(a)(7)(B). Appellee's Brief contains 6,076 words, excluding any parts exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

*/s/ Victor N. Corpuz*
VICTOR N. CORPUZ