# No. 24-20554

---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

Karen Green,

Plaintiff - Appellant

v.

HCTec Partners, L.L.C.,

Defendant - Appellee

---

**On Appeal from the United States District Court
for the Southern District of Texas**

---

**REPLY BRIEF OF APPELLANT**

---

Bruce A. Coane
Texas Bar No. 04423600
bruce.coane@gmail.com

COANE AND ASSOCIATES, PLLC
5177 Richmond Ave, Suite 770
Houston, TX 77056
Phone: (713)-850-0066
**ATTORNEY FOR APPELLANT**

1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS……………………………………………………...2

TABLE OF AUTHORITIES……………………………………………….4

REPLY ARGUMENT………………………………………………………...6

I.   HCTec distorts Green's burden to prove race and sex discrimination under the *McDonnell Douglas* framework…………………6

   A. *McDonnell Douglas* allows a plaintiff to defeat summary judgment with circumstantial evidence alone……………...6

   B. The *Owens* case is an exception to the general rule about showing pretext by discrediting the employer's reasons……………..8

   C. Green's evidence has created a genuine factual dispute sufficient to necessitate a trial……………………………………10

II. The circumstances of Green's firing–which HCTec misrepresents–strongly suggest race and sex discrimination………………13

   A. HCTec's argument that Green performed poorly is false and pretextual………………………………………………..13

   B. HCTec's failure to warn Green or attempt to provide her with opportunities for improvement are strong signs of pretext…….14

   C. Bernard Rush's hasty and unilateral decision to terminate Green suggests that his decision was driven by animus…………….15

   D. This Court should view HCTec's objectively weak and implausible rationales for Green's termination as "unworthy of credence.".................................................................17

   E. The Hasheem Reddick incident supports Green's allegations of discrimination, not HCTec's rebuttal……………………......19

   F. The "same-actor inference" is unpersuasive here…………………...20

III. The circumstances of Green's firing strongly suggest retaliation……...21

IV. Green's mistreatment constituted a hostile work environment…………24

A. Conduct need not include insults or shouting to create a hostile work environment; the key is whether it was severe or pervasive enough to affect job performance……………25

B. Separate evidence and arguments for animus are not required for related causes of action……………………………….26

CONCLUSION………………………………………………………….27

CERTIFICATE OF SERVICE……………………………………………..28

CERTIFICATE OF COMPLIANCE……………………………………29

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                          Page(s)

*Allen v. United States Postal Serv.*,
63 F.4th 292, 304 (5th Cir. 2023)...................................................................20

*Bobo v. ITT, Cont'l Baking Co.*,
662 F.2d 340, 342-43 (5th Cir. 1981)...........................................................21

*EEOC v. WC&M Enters.*,
496 F.3d 393, 399-400 (5th Cir. 2007)..........................................................25

*Haun v. Ideal Indus.*,
81 F.3d 541, 546 (5th Cir. 1996)...................................................................20

*Hayatdavoudi v. Univ. of La. Sys. Bd. of Trs.*,
No. 00-30389, 2000 U.S. App. LEXIS
39093, *11, n. 10 (5th Cir. Nov. 27, 2000))...............................................26-27

*Hernandez v. Velasquez*,
522 F.3d 556, 560 (5th Cir. 2008)...................................................................11

*Kohler v. Englade*,
470 F.3d 1104, 1114 (5th Cir. 2006)...............................................................24

*Laxton v. Gap, Inc.*,
333 F.3d 572, 578-79 (5th Cir. 2003)..........................................................9-10, 17

*L&A Contracting Co. v. S. Concrete Servs.*,
17 F.3d 106, 113 (5th Cir. 1994)...................................................................24

*Martin v. Hutson*,
No. 24-30451, 2025 U.S. App. LEXIS
12099, *1, n.1 (5th Cir. May 19, 2025)......................................................20-21

*McDonnell Douglas Corp. v. Green*
411 U.S. 792 (1973)........................................................................6, *passim*

*Owens v. Circassia Pharms., Inc.*,
33 F.4th 814, 826, 828-30, 833-34  (5th Cir. 2022)................................8-10, 13-16

*Reeves v. Sanderson Plumbing Prods.*,
530 U.S. 133, 142, 143, 147-49 (2000)....................................7-9, 12-13, 16-17, 26

*Richard v. Cingular Wireless LLC*,
233 F.App'x 334, 338 (5th Cir. 2007).......................................................23

*Richardson v. Prairie Opportunity*,
470 F.App'x. 282, 287 (5th Cir. 2012)....................................................22-23

*Salazar v. Lubbock Cty. Hosp. Dist.*,
982 F.3d 386, 391 (5th Cir. 2020).......................................................14-15

*Sandstad v. CB Richard Ellis, Inc.*,
309 F.3d 893, 899 (5th Cir. 2002).........................................................8

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502, 509-11, 526 (1993)......................................................6, 11

*USPS Bd. of Governors v. Aikens*,
460 U.S. 711, 714 (1983).................................................................6

Rules

Fed. R. Civ. P. 56(a)......................................................................11

5

## **REPLY ARGUMENT**

**I. HCTec distorts Green's burden to prove race and sex discrimination under the *McDonnell Douglas* framework.**

    **A. *McDonnell Douglas* allows a plaintiff to defeat summary judgment with circumstantial evidence alone.**

HCTec concedes that the *McDonnell Douglas* framework applies in this case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework was "devised [to] allow both plaintiffs and the courts to deal effectively with employment discrimination revealed only through circumstantial evidence." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 526 (1993) (quoting *USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983) ("There will seldom be eyewitness testimony as to the employer's mental processes.") In other words, the purpose of the framework is to provide plaintiffs with a remedy for discrimination, even where the employer has not made the discriminatory intent obvious–such as through blatantly racist or sexist statements. But, while HCTec agrees that the *McDonnell Douglas* framework applies, HCTec's arguments ignore its central tenets.

The district court concluded that Green made a prima facie case under *McDonnell Douglas*, creating a rebuttable presumption of discrimination. ROA.1239-43. HCTec has not disputed that on appeal. Instead, HCTec alleges that it has overcome the presumption of discrimination by giving sufficient

non-discriminatory reasons for terminating Green, and that those reasons are genuine, not pretextual. HCTec's Brief, p.7. HCTec also makes the bolder argument that "even if Green presented evidence that contradicts some of the factual basis leading to her termination, that would not be enough to avoid summary judgment" because "Green failed to present sufficient (let alone substantial) evidence permitting a reasonable inference that her race or sex was what really motivated HCTec's termination decision." HCTec's Brief, p.14-15. HCTec thus seeks to impose a direct evidence requirement—in direct contravention of *McDonnell Douglas*, which for over half a century has allowed plaintiffs to proceed on circumstantial evidence alone.

HCTec notes that "Green does not dispute that HCTec met its burden of production"—namely, the burden to proffer a legitimate, non-discriminatory reason for her termination following her establishment of a prima facie case. HCTec's Brief, p.10. That burden is light and trivial. As HCTec itself admits, the burden of production "can involve no credibility assessment." *Id.* at 9 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)). Green does not dispute that HCTec has provided reasons for the termination; rather, she challenges whether those reasons are credible or merely pretext for discrimination. It is not difficult for a company, when faced with litigation, to come up with flimsy excuses for terminating someone.

### B. The *Owens* case is an exception to the general rule about showing pretext by discrediting the employer's reasons.

HCTec leans heavily on *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814 (5th Cir. 2022) for its application of the *McDonnell Douglas* framework. HCTec relies on *Owens* because of its unusual holding, specific to the facts of that case. There, this Court held:

> [E]ven if Owens has provided sufficient evidence for a jury to disbelieve Circassia's explanation for her termination, that is not necessarily enough. Employers are "entitled to be unreasonable" in terminating their employees "so long as they do not act with discriminatory animus." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Thus, it is the employee's burden to create a fact dispute as to reasonableness that could give rise to an inference of discrimination. *Id.* As the Supreme Court explained in *Reeves*, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." 530 U.S. at 148, 120 S.Ct. 2097. As we explain below, this is one of those instances.
> *Owens*, at 826.

This Court decided *Owens* in favor of the employer based on a detailed analysis of the employer's behavior, which made discriminatory motives unlikely. That fact-specific analysis led this Court to depart from the outcome typically dictated by the *McDonnell Douglas* framework. Indeed, in the passage quoted above, this Court said that disbelieving the employer's reasons for termination is not *necessarily* enough for a ruling in favor of the employee, and that *Owens* is *one* instance where

8

the employer should prevail even though the *McDonnell Douglas* framework normally tilts toward the plaintiff.

The more general rule, however, is that "a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability" and that it is an "[error to proceed] from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Reeves*, at 149. In this case, the district court made exactly that error, though some of Green's evidence can, in fact, be viewed as "additional" and "independent" of her prima facie case. *See infra*, at II. "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination *even without* further evidence of defendant's true motive." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (emphasis added). While *Laxton* describes the general principle, the use of the qualifier "likely" leaves the door open to exceptions. *Owens* is such an exception: in that case, even though the plaintiff made a prima facie case and refuted the employer's reasons for termination, the factual details nevertheless made discriminatory animus unlikely. But HCTec does not–and indeed, *cannot*–argue that this case is more like *Owens* than like *Laxton*.

HCTec cites *Owens* for the proposition that a plaintiff must present "substantial evidence" that the employer's "asserted reason for terminating her is

9

pretext for discrimination." *Owens*, at 826. HCTec treats the term "substantial evidence" as if Green must give direct evidence of pretext, or show by a preponderance of the evidence that HCTec acted with race or sex bias. Yet that is not what this Court meant by "substantial evidence." Indeed, Green's burden is significantly lower at this stage than HCTec claims it is. "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded triers of fact in the exercise of impartial judgment might reach different conclusions." *Owens*, at 826 (quoting *Laxton*, at 579). That is a relatively low standard and one which Green easily meets: the more favorable treatment of Ryan Noland (a white male), HCTec's misrepresentation of the Hasheem Reddick incident, and the abrupt nature of Green's termination could all lead a "reasonable and fair-minded trie[r] of fact" to conclude that HCTec's alleged reasons for termination are pretexts for discrimination. *See infra*, at II.

### C. Green's evidence has created a genuine factual dispute sufficient to necessitate a trial.

It must be emphasized that Green is not seeking summary judgment in her favor; she is simply asking this Court to reverse the district court's grant of summary judgment to HCTec so that her case can proceed to trial. Trial is the traditional means by which factual disputes are resolved and credibility is assessed. Green's case is strong enough to proceed to trial.

Summary judgment is a resource-saving shortcut that a court should grant to a moving party only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The bar for granting summary judgment is a high one, and the nonmovant should be given the benefit of the doubt. "When deciding whether a fact issue exists, we review the evidence and the inferences drawn from it in the light most favorable to the nonmoving party." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). This case clearly presents a "genuine dispute" of fact, with witness credibility playing a decisive role. Summary judgment for HCTec was therefore inappropriate.

According to HCTec's brief:

> Green confuses the different stages of the *McDonnell Douglas* framework. The first stage of the analysis is the prima facie case. The District Court found that Green satisfied the elements of a prima facie case, and it disagreed with some of HCTec's arguments in doing so. However, that does not mean that the reasons articulated by HCTec for Green's termination are false or a pretext for discrimination. Once HCTec met its burden of production, any presumption of discrimination "dropped out of the picture," and Green had the burden to show pretext.

> HCTec's Brief, p. 11-12 (citing *Hicks*, at 510-11).

Green does not "confus[e] the different stages." Rather, Green argues that evidence leading to a finding that Green made a prima facie case–including the district court's view that some of HCTec's summary judgment arguments were not

credible–is also relevant evidence at the pretext stage of the analysis. The Supreme Court has explicitly endorsed this way of viewing the evidence. "[A]lthough the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual." *Reeves*, at 143. For instance, in finding that Green met the fourth element of her prima facie case–that she was treated less favorably than non-Black female counterparts–the district court explained:

> Green alleges that Noland would receive prompt responses for inquiries or requests for information from their supervisor when Green would be ignored; Noland would be taken at his word when responding to questions about his completion of tasks, but Green would be badgered or questioned; Green was assigned heavier workloads and more subordinate employees for which she was responsible than Noland; and Noland received guidance, counseling, and a performance improvement plan before adverse action, while Green was terminated.
>
> HCTec admits to the difference in workload and number of subordinate employees between Green and Noland. HCTec claims to have offered "coaching and counseling" to Green, but provides no evidence in support. HCTec does not dispute that Noland received various remedial approaches to issues regarding "communication and other behaviors with clients." *McDonnell Douglas* does not demand a showing that race or sex was the but-for cause of this disparate treatment at the pretext stage; the inquiry is merely whether there was disparate treatment. The court finds that Green has raised factual disputes material to determining whether she was treated less favorably than her white male counterpart.

HCTec incorrectly contends that the evidence described by the district court above should somehow be confined to the prima facie stage of the *McDonnell Douglas* analysis, and should not influence the pretext stage. As the Supreme Court made clear in *Reeves*, that is not the case. The fact that Noland, a white male, "received various remedial approaches," whereas Green was fired without warning, is strong evidence of racial animus. ROA.1242. It is far more than the "mere scintilla of evidence" described in *Owens*. *Owens*, at 834.

## II. The circumstances of Green's firing–which HCTec misrepresents–strongly suggest race and sex discrimination.

### A. HCTec's argument that Green performed poorly is false and pretextual.

HCTec asserts that, after Green was promoted on January 24, 2021, "Rush, and others, quickly realized she lacked the ability to be a successful manager at HCTec. The concerns culminated with two incidents occurring on May 13, 2021 which led to Rush's decision to terminate Green's employment." HCTec's Brief, p.13. But there was a gap of nearly four months between January 24 and May 13, and HCTec fails to explain how "Rush, and others, quickly realized" that Green was doing a poor job. HCTec's Brief, p.4. As the district court noted, "HCTec did not document issues about Green's performance or qualifications before she was fired, other than in an email from Mayolo describing her performance as poor." ROA.1237. HCTec implies that Green's actions on May 13 were the final straw

leading to her termination, but the company is notably vague about what she supposedly did wrong before that date. This reinforces Green's argument that her termination was motivated by animus, and that even her alleged missteps on May 13 were mere pretexts for a termination decision which Rush was already waiting and hoping to make.

### B. HCTec's failure to warn Green or attempt to provide her with opportunities for improvement are strong signs of pretext.

HCTec relies heavily on *Owens* because of its pro-employer result. But *Owens* does not support HCTec's position, and is clearly distinguishable from the case at hand. In *Owens*, the plaintiff was fired "on the 57th day of a 60-day [performance improvement plan]," which this Court specifically stated was "hardly on the same level as firing someone without warning." *Owens*, at 833-34. Yet Green was, indeed, fired without warning. HCTec argues that the progressive discipline policy in this case "is of little value to the court's pretext analysis where the policy specifically provided for the employer's discretion to determine the appropriate level of discipline based on the particular facts and circumstances." HCTec's Brief, p.12 (citing *Salazar v. Lubbock Cty. Hosp. Dist.*, 982 F.3d 386, 391 (5th Cir. 2020)).

But HCTec failed to explain why the company used its "discretion" to terminate Green without warning in this case. HCTec cannot explain why Green's

alleged shortcomings were severe enough to warrant immediate termination when other individuals at HCTec, like Hasheem Reddick, were given the benefit of a performance improvement plan. Nor does HCTec explain why Noland–a white male in the same Tier 2 Manager role as Green–deserved warnings and remedial help, while Green deserved hasty firing. HCTec accused Green of very questionable transgressions, if they can even be considered transgressions at all. Even if HCTec did not have a written progressive discipline policy, its refusal to give Green the same leniency, grace, and opportunity for improvement that it gave to non-Black female employees would still support a finding of discrimination.

### C. Bernard Rush's hasty and unilateral decision to terminate Green suggests that his decision was driven by animus.

Similarly, in *Owens*, the plaintiff argued that the employer's "failure to investigate" her performance by comparing her to others and interviewing her team were evidence of pretext. *Owens*, at 828. This Court held that, indeed, "[a]n employer's investigatory choices might, depending on the facts of a particular case, be suspicious in a way that renders the defendant's explanation unworthy of credence and permits an inference of discrimination." *Id.* at 828-29 (citing *Reeves*, at 147). The Court ruled against Owens because the employer had, in fact, conducted "serious investigations," which "Owens has failed to demonstrate [were]

15

inadequate at all." *Owens*, at 829-30. Here, there was no investigation whatsoever.

As HCTec explains, Bernard Rush made the decision promptly and unilaterally:

> I secured the support from Human Resources to terminate Green. Mayolo's only role in termination was to provide human resources support as I made the decision to terminate Green.
>
> HCTec's Brief, p.5 (citing ROA.1229-30, Declaration of Bernard Rush).

In other words, Rush treated support from Human Resources merely as a box to check before doing what he wanted to do: terminate Green. There was no attempt to engage Tracye Mayolo or any other administrators at HCTec in a good faith discussion about *whether* to terminate Green or instead pursue some other course of action. Rather, the decision was made in haste, driven by Rush's pre-existing animus toward Green. Rush stated in his deposition:

> Q. Who were all of the persons involved in making the decision to terminate Ms. Green in 2021?
> A. It was ultimately my decision to terminate Ms. Green.
> Q. Before you made that ultimate decision, did you confer with anyone else?
> A. Just the HR team.
> Q. And who were that -- those people?
> A. At the time, Tracy Maiolo was our HR partner.
> …
> Q. Had you already made the decision when you reached out to her?
> A. Yes.
>
> ROA.945-46, Deposition of Bernard Rush

Rush could have pursued a conversation with Green and Mayolo, taken some time to reflect on the situation, or consulted HCTec's upper management before making

the drastic decision to terminate Green. But he did not; instead, he essentially acted alone and impulsively (with a rubber stamp from Mayolo). HCTec's attempts to logically explain Green's termination are post hoc excuses (i.e., pretexts) for Rush's emotional, animus-driven decision.

**D. This Court should view HCTec's objectively weak and implausible rationales for Green's termination as "unworthy of credence."**

HCTec argues that "[m]ost of Green's pretext arguments are simply her disagreement with HCTec's assessment of her performance and the importance of the specific incidents leading to her termination." HCTec's Brief, p.12. But Green's point is not merely that *she personally* disagrees with HCTec's reasons for firing her, but also that a *reasonable factfinder* would. Green asks this Court to assess whether it is plausible that a firing would truly be motivated by the reasons HCTec has given here, or whether a jury could instead conclude that there were hidden motives at play. If this Court agrees, based on common sense, that HCTec's reasons are "unworthy of credence," then this Court should rule accordingly. *See Laxton*, at 578 (citing *Reeves*, at 143).

According to HCTec, even if Green is right to dispute HCTec's assessments of her performance, HCTec should still prevail because employers are "entitled to be unreasonable" as long as they are not unreasonable in a racist or sexist manner. HCTec's Brief, p.13-14. But Green does not argue that the unreasonableness itself

violates Title VII; rather, she argues that HCTec's stated justifications for terminating her are sufficiently unreasonable for this Court to conclude that they were *not the real reasons for her termination*. Unreasonableness toward an employee, on its own, might not be a strong sign of race or sex based animus. But unreasonableness in combination with a prima facie case of discrimination–which the district court agreed that Green proved–is a clear red flag. Again, HCTec attempts to sidestep the whole premise of *McDonnell Douglas*: that a plaintiff can defeat summary judgment for an employer with only circumstantial evidence of discrimination.

With regard to HCTec's assertion that Green "sent an email to a client (Centura) that Rush found to be inappropriate and insubordinate," HCTec's reasoning is unpersuasive. There is no evidence that Rush had a problem with this email until he was forced to provide reasons for terminating Green. HCTec's Brief, p.13. Green does not dispute that her "i am done" email was the immediate trigger of Rush's decision to terminate her–indeed, the immediacy of her termination makes that conclusion hard to avoid. *See* ROA.886 ("i am done" email at 11:32am); ROA.900 ("She's term'd in system" email at 12:08pm). But Green maintains that these were mere excuses (i.e., pretexts) used to justify Rush's decision to terminate her–something he was already inclined to do because she is a Black woman and complained about discrimination. HCTec's reasons are

18

sufficiently tenuous that Green should be afforded the benefits of trial, including the opportunity to cross-examine Rush and others at HCTec.

### E. The Hasheem Reddick incident supports Green's allegations of discrimination, not HCTec's rebuttal.

Moreover, it is the *other* incident cited by HCTec to justify terminating Green–namely, that she was reluctant to place Hasheem Reddick, one of her subordinates, on a performance improvement plan–that most clearly shows Rush's (and therefore, HCTec's) animus. Indeed, this whole incident supports Green's case far more than HCTec's. Green told Bernard Rush on a Teams chat:

> Bernard, Dane [Young] is concerned and would appreciate you being on the call for several reasons. Please call to discuss. He is worried that Hasheem will be confrontational. and of course since I am female, question.
> ROA.875.

That Teams chat is an exhibit in the record. ROA.874-75. It clearly shows that Green was *relaying* Dane Young's concern. Yet Rush stated, in his Declaration which HCTec cited in its brief, that the "of course since I am female" comment reflects her "inappropriate bias" against Hasheem Reddick based on his ethnicity. HCTec's Brief, p.4-5 (citing ROA.1229-30). Rush attempts to turn the tables on Green by arguing that HCTec would face "potential liability" for employment discrimination because of *her* attitude toward Reddick. *Id.* But Rush and HCTec ignore what is plainly clear from the Teams chat: the concern about Hasheem's

19

confrontational attitude toward women did *not* come from Green, but rather from Dane Young–a male managing lead. The very fact that Rush cited this as a reason for Green's termination is telling—and supports an inference of sex-based animus.

### F. The "same-actor inference" is unpersuasive here.

HCTec also cites the "same-actor inference," arguing that it is implausible that Rush would terminate Green based on animus when (1) he is African-American himself, and (2) he was involved in hiring Green in the first place. HCTec's Brief, p.15-16. This Court has acknowledged that the same-actor inference is not binding and conclusive. *Haun v. Ideal Indus.* 81 F.3d 541, 546 (5th Cir. 1996).

Even if the same-actor inference might be persuasive in certain cases, this is not one of them. *See Allen v. United States Postal Serv.*, 63 F.4th 292, 304 (5th Cir. 2023) ("application of the 'same actor' inference here does not comport with the rationale beneath the inference"). First, Green alleges discrimination not only based on race, but also based on sex. While Green and Rush are both of the same race, they are not of the same sex, and it is entirely plausible that an African-American man would exhibit animus against an African-American woman. *See Martin v. Hutson*, No. 24-30451, 2025 U.S. App. LEXIS 12099, *1, n.1 (5th Cir. May 19, 2025) (suits for "intersectional" discrimination based on a

combination of plaintiff's race and sex may be cognizable under Title VII) (citing *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342-43 (5th Cir. 1981)).

Moreover, while Rush may have had some involvement in promoting Green to Tier 2 Manager, he was one of "three or four directors" interviewing her for that role, and "they made a decision to promote [Green] to that role, together." ROA.752. By contrast, Rush admits that he made the decision to fire Green on his own, with no real input from Human Resources or the others involved in hiring Green. ROA.945-46. Rush's biases were far more likely to come into play when he was acting alone rather than as part of a committee. This strongly undercuts the same-actor inference. Moreover, Rush's animus toward Green evolved and intensified once she complained of discrimination (*see infra*, at III, discussing retaliation). That would explain why Rush was unopposed to hiring Green but later became intent on terminating her.

### III.   The circumstances of Green's firing strongly suggest retaliation.

HCTec argues that "[i]n the page and a half of Green's Brief discussing the retaliation case, she fails to cite to any evidence of any retaliatory motive by HCTec." HCTec's Brief, p.18. Again, however, circumstantial evidence is enough to defeat summary judgment. HCTec states, somewhat misleadingly, that "Green did not express concerns to Rush that she handled a disproportionate amount of

work or that she was required to work more hours." HCTec's Brief, p.4. Later, HCTec acknowledges that "Green reported her concerns about race and sex discrimination to Mayolo in Human Resources shortly after her promotion to manager" and that this led to "a Teams meeting with Rush, Green and Mayolo to discuss the issue." HCTec's Brief, p.6. It is not difficult to see how Green's accusations led Rush to treat Green unfavorably over the coming months and ultimately terminate her.

Green did not belabor her retaliation case in her Brief because doing so would be duplicative. The arguments and evidence for retaliation largely overlap with are the arguments and evidence for race and sex discrimination, and therefore, the analysis is largely the same. There is no need to rehash the arguments about pretext. For example, in *Richardson v. Prairie Opportunity*, this Court reversed summary judgment on an employee's retaliation claim based on abbreviated analysis after a more detailed discussion of the employee's discrimination claim. 470 F.App'x. 282, 287 (5th Cir. 2012) ("As detailed above, Richardson presented evidence creating a genuine dispute on the truth of [the employer's] explanation. Therefore, the summary judgment against Richardson's retaliation claim was also improper.") Especially since she reported discrimination soon after her promotion to manager, it takes little imagination to see how Green's race, sex, *and* the fact that she complained about discrimination were, *in combination*, the driving force

behind Rush's unfair and hostile treatment. The district court held that the 10-week gap between Green's complaint of discrimination and her termination was "sufficiently close," under this Court's precedents, to "assum[e] that the time period between her protected activity and her termination supports an inference of causation." ROA.1244-45 (citing *Richard v. Cingular Wireless LLC*, 233 F.App'x 334, 338 (5th Cir. 2007)). Moreover, to the extent that the "same-actor inference" holds water in this case, which it does not–see *supra*–it is plausible that Rush's negative attitudes toward Green began, or at least intensified significantly, once she complained of discrimination. That would explain why Green was not fired during her role as Team Lead, but was fired mere months into her role as Team 2 Manager.

Moreover, Rush states that he found Green's statement about Hasheem Reddick being confrontational towards her because she is "female" to be problematic. ROA.1229-30. While Green was, as previously explained, simply relaying Dane Young's concern, Rush's approach to this issue was retaliatory. Green had already expressed concern about race and sex discrimination against her at HCTec. Dane Young's concern that Reddick would treat Green poorly on a one-on-one phone call because of her sex should have led Rush to be cautious about insisting on such a phone call. Instead, Rush terminated Green because he thought her relayed concern about gender was "inappropriate." This is retaliation

for opposing sex discrimination. Put simply, Rush was angry with Green for "playing the woman card," even indirectly, and chose to terminate her for doing so. This is exactly what Title VII's retaliation protections forbid.

## IV. Green's mistreatment constituted a hostile work environment.

HCTec objects to Green's argument for reversing summary judgment as to her hostile work environment count. According to HCTec, the "Court should not address this claim because Green has failed to adequately brief the argument." HCTec's Brief, p.20. This is inaccurate. An issue could be dismissed for inadequately briefing if, for example, no authorities are cited in a one-page argument. *Kohler v. Englade*, 470 F.3d 1104, 1114 (5th Cir. 2006) (citing *L&A Contracting Co. v. S. Concrete Servs.*, 17 F.3d 106, 113 (5th Cir. 1994)). Here, Green cited multiple cases in her principal brief, and the facts supporting her hostile work environment count were described in the Statement of Facts section of her brief. Green's Brief 9-12, 32-34.

Further, the district court held that "Green's allegations that she was ignored and given a heavy workload…[do] not generally support a hostile work environment claim, at least when not accompanied by evidence of sex or race-based animus." ROA.1248. Green argues in this appeal, of course, that there *is* strong evidence of such animus–albeit largely circumstantial. If this Court

agrees, it should reverse the district court's grant of summary judgment as to the hostile work environment count and allow it to be heard at trial along with the discrimination and retaliation counts.

### A. Conduct need not include insults or shouting to create a hostile work environment; the key is whether it was severe or pervasive enough to affect job performance.

HCTec argues that the treatment Green complains of was not "severe, pervasive, or abusive" enough to constitute a hostile work environment, and that her "claim fails as a matter of law." HCTec's Brief, p.20. But this Court has not insisted that treatment be particularly severe or egregious to constitute a hostile work environment. Rather, "[u]nder the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment." *EEOC v. WC&M Enters.*, 496 F.3d 393, 400 (5th Cir. 2007). While severity of the harassment is one of the factors in the totality of the circumstances test, another is "whether it interferes with an employee's work performance." *Id.* at 399. Here, Green has suffered such treatment–i.e., Rush ignored her questions, deliberately gave her a disproportionate amount of difficult work, and assigned her a project for which she was not certified. ROA.1247. By deliberately giving Green work which he knew or should have known she was not in a position to perform well, Rush acted with hostility. Unlike insults or yelling, this more insidious type of

harassment need not be obvious or obnoxious in order to have a great impact on Green's ability to do her job. Setting up an employee for failure, or the appearance of failure, can be just as "hostile" as screaming and shouting.

**B. Separate evidence and arguments for animus are not required for related causes of action.**

HCTec asserts that discrimination evidence and arguments cannot be transferred to the hostile work environment issue because they are "[t]wo different claims, two different issues." HCTec's Brief, p.21. That is simply illogical. As explained above, "although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves*, at 143. Just as the *McDonnell Douglas* framework supports the conclusion that HCTec was driven by racial, gender, and retaliatory motives in *terminating* Green, the same logic leads to the same explanation for HCTec's *hostile treatment* of Green prior to her termination. Separate evidence of animus is not needed for this count; the hostile work environment is intertwined with the events that led to Green's termination, and ultimately, this lawsuit. *See Hayatdavoudi v. Univ. of La. Sys. Bd. of Trs.*, No. 00-30389, 2000 U.S. App. LEXIS 39093, *11, n.10 (5th Cir. Nov. 27, 2000) (holding that the *McDonnell Douglas* framework is an "appropriate device" for evaluating whether past employment actions alleged as evidence of hostile work

environment were a product of discriminatory animus). Green deserves the opportunity to try all of her causes of action–sex and racial discrimination, retaliation, and a hostile work environment–before a jury.

## CONCLUSION

The district court erred in its decision to grant summary judgment to HCTec. HCTec's arguments for upholding that decision are unavailing. For the reasons stated above and in her principal brief filed on February 9, 2025, Karen Green asks this Court to reverse the district court's grant of summary judgment to HCTec and allow this case to proceed to trial.

Respectfully submitted:

/s/  *Bruce A. Coane*
Bruce A. Coane
Texas Bar No. 04423600
bruce.coane@gmail.com

COANE AND ASSOCIATES, PLLC
5177 Richmond Ave., Suite 770
Houston, TX 77056
Telephone: (713) 850-0066
Fax: (832) 558-1780

# CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing document by filing the same with the Court's CM/ECF electronic filing system on May 30, 2025, which will send notification of such filing to all counsel of record.

*/s/Bruce A. Coane*
Bruce A. Coane

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1, this document contains **5146** words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Google Documents in Times New Roman 14-point font.

s/*Bruce A. Coane*
Bruce A. Coane